**EXHIBIT B**
**SIGNED ASSET PURCHASE**
**AGREEMENT**

ASSET PURCHASE AGREEMENT

By and between

135 Waverly Realty, LLC
as Purchaser,

and

Village Red Restaurant Corp. d/b/a Waverly Restaurant
a New York corporation

as Seller,

November     , 2018

# ASSET PURCHASE AGREEMENT

This PURCHASE AGREEMENT (this "**Agreement**") is made and entered into on October, 2018, by and between 135 Waverly Realty, LLC through a limited liability company, (the "**Purchaser**"), on the one hand, and Village Red Restaurant Corp. d/b/a Waverly Restaurant, a New York corporation (the"**Seller**").

## RECITALS

The Seller has filed a voluntary bankruptcy petition pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and is in the possession of certain trade fixtures used in connection with its business;

A. The Seller is engaged in the business of operating a restaurant under the name Waverly Restaurant located at 385 6th Avenue, New York, New York 10014 (the"**Business**").

B. The Purchaser desires to purchase from the Seller, and **the Seller desire** to sell to the Purchaser, substantially all assets of its Business Assets, other than the exclusions provided for herein, upon the terms and subject to the conditions set forth herein and in accordance with Sections 363 and 365 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

## SECTION 1
## PURCHASE OF ASSETS

**1.1** <u>Acquired Assets</u>. Subject to the terms and conditions hereof, at the Closing, the Seller shall sell, assign, transfer, convey, and deliver to the Purchaser, and the Purchaser shall purchase and accept, all of the Seller's right, title and interest in and to substantially all of the Seller's Business Assets, namely, all trade fixtures owned by Seller, whether affixed, or non-affixed, including without limitation, restaurant equipment, tables and chairs, and similar business equipment and personalty (collectively "Business Assets") ,but excluding personal property, contracts, and/or leases or fixtures, equipment not owned by Seller or such Fixtures which are so affixed as to constitute a part of the Premises/Realty, by operation of law. Upon closing, the Business Assets shall be conveyed by a Bill of Sale acceptable to Purchaser. Purchaser shall not remove or otherwise dispose of the Business Assets for a minimum period of thirty (30) days following closing or such longer period mutually acceptable, during which period Seller may continue to utilize same, to facilitate Seller's transition and/or business operations, at a fair rental, terms and conditions as the parties may reasonably agree upon.

**1.2** <u>Sale Free and Clear of Liens</u>. The Business Assets shall be transferred by the Seller, to Purchaser free and clear of all liens, claims and encumbrances, pursuant to Bankruptcy Code§363(f).

**1.3** **No Assumption of Liabilities**. Notwithstanding anything to the contrary in this Agreement,

Purchaser shall not assume any liabilities of the Seller or its estate, nor shall Purchaser be deemed to be a successor to the Seller or its bankruptcy estate for any purpose whatsoever.

2 **Third Party Consents; Assignment and Assumption of Contracts**. At the request of the Purchaser, the Seller shall obtain, prior to the Closing Date, solely those consents of third parties as may be necessary or required to transfer or assign any interest of the Seller in the Seller Business Assets without liability to the Buyer.

## SECTION 2
## PURCHASE PRICE

2.1 **Purchase Price. The purchase price** for the Business Assets (the "**Purchase Price**") shall be $50,000.00Dollars. On the **Closing Date,** the Purchaser shall pay to Seller \ an amount equal to the Purchase Price (as defined below) minus the Deposit (defined below). Upon receipt of the Closing Payment, the Seller shall transfer the Business to the Purchaser.

2.2 **Deposit**. Upon the execution of this Agreement, the Purchaser shall pay to Seller the sum of $25,000.00Dollars (the "**Deposit**") payable to "Morrison Tenenbaum as Attorneys," which amount shall be credited against the Purchase Price as described in Section 2.1 hereof. Upon the Purchaser's material breach of this Agreement, and upon ten (10) business days' notice to the Purchaser, the Deposit shall be forfeited to the Seller's bankruptcy estate. In the event that the Seller enters into a Competing Transaction (defined herein), the Deposit shall be returned to the Purchaser within two (2) business days following the Seller's execution of the agreement to enter into such Competing Transaction unless Purchaser is the second highest bidder at the auction in which Court-approved bid procedures shall apply. The Deposit shall be held in an attorney escrow account of the Seller's attorney until its application pursuant to this Section2.2.

## SECTION 3
## CLOSING

3.1 **Closing**. The closing (the "**Closing**") shall take place in approximately thirty (30) days after entry of an order by the Bankruptcy Court approving the sale, provided that consummation of the sale has not been stayed by operation of law, including pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, or a court of competent jurisdiction, or at such other date and place as shall be agreed among the parties hereto (the "**Closing Date**") and shall be effective at 11:59 PM on the Closing Date.

**3.2** **Seller Closing Deliveries.** The Seller shall deliver to the Purchaser the following documents on the Closing Date:

    (a)    a bill of sale, in form and substance reasonably satisfactory to the Purchaser and Seller, dated as of the Closing Date, with respect to the Business Assets sufficient to vest title in the Business Assets in the Purchaser pursuant to the provisions of the Sale Order; and

    (b)    all other documents reasonably requested by the Purchaser to be delivered by the Seller in connection with the consummation of the transactions contemplated by this Agreement.

**3.3** **Purchaser Closing Deliveries.** The Purchaser shall deliver the following to the Seller on the Closing Date:

    (a)    the Purchase Price by certified or bank check payable to the order of the Seller; ;and

    (b)    all other documents reasonably requested by the Seller to be delivered by the Purchaser in connection with the consummation of the transactions contemplated by this Agreement.

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller hereby represents and warrants to the Purchaser as of the date hereof and as of the Closing Date as follows. The Seller acknowledges that the Purchaser is relying on the following representations and warranties in entering into this Agreement.

**4.1 Authorization for Agreement and Consents.** The Seller has all requisite corporate or limited liability company power and authority, as applicable, to enter into this Agreement and to sell, assign, transfer and convey the Business Assets to the Purchaser under this Agreement. The execution, delivery and performance of this Agreement by the Seller is subject to Bankruptcy Court approval. Subject to approval of the Bankruptcy Court, this Agreement and any documents or instruments to be executed and delivered by Seller pursuant hereto constitute and will constitute legal, valid and binding obligations of the Seller, as applicable, enforceable in accordance with their terms.

## SECTION 5
## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Seller as of the date hereof and as of the Closing Date as follows. The Purchaser hereby acknowledges that the Seller is relying on the following representations and warranties in entering into this Agreement.

5.1 **Authorization for Agreement and Consents**. The Purchaser has all requisite limited liability company power and authority to enter into this Agreement and to perform its obligations hereunder. The execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly authorized by all necessary actions of the Purchaser under applicable law. This Agreement and any documents or instruments to be executed and delivered by the Purchaser pursuant hereto constitute and will constitute legal, valid and binding obligations of the Purchaser enforceable in accordance with their terms.

## SECTION 6
## SELLER'S REQUIREMENTS PENDING CLOSING

6.1 **Conduct of the Business Pending Closing**. From the date of the Agreement until the Closing, the Seller shall safeguard the Business Assets in a manner consistent with the Seller's operations during the chapter 11 proceeding., Purchaser acknowledges and agrees that the Seller is in severe financial distress, that such operations are not consistent with the Seller's ordinary course historical operations. From the date of the Agreement until the Closing, the Purchaser shall have the right to enter and inspect the Business Assets during normal business hours and upon at least two days prior notice. Except as otherwise contemplated under this Agreement or as required by applicable law, from the date hereof until the Closing, without the prior consent of the Purchaser, which shall not be unreasonably, withheld, conditioned or delayed the Seller shall:

(a) not sell, lease, license, or otherwise surrender, relinquish, encumber, or dispose of any of the Business Assets

(b) not take any action or omit to take any action that would cause any of the representations and warranties of the Seller to become inaccurate;

however, that (i) nothing in this Section 6 shall restrict the Seller from taking actions otherwise specifically permitted or contemplated by this Agreement or otherwise required by the Bankruptcy Court or the pendency of the Bankruptcy Filing; and provided, further, that nothing in this Section 6 shall restrict the Seller from entering into or consummating the sale or

assignment of any of the Excluded Assets on terms consistent with documentation filed with the Bankruptcy Court.

## SECTION 7
## BUSINESS
## ASSETS
## ONLY

This sale does not include the sale of Seller's Business, Good Will or otherwise; but is strictly the sale of Seller's Business Assets.

## SECTION 8
## APPROVAL OF BANKRUPTCY COURT AND COMPETING TRANSACTIONS

  8.1 <u>Submission for Bankruptcy Court Approval</u>. On or before November __, 2018 at __:__ a.m., the Bankruptcy Court will conduct the hearing on the Seller's motion (the "**Sale Motion**") seeking (i) approval of this Agreement, the Seller's performance hereunder and the sale of the Business Assets free and clear of all liens, claims, interests, and encumbrances (the "**Sale Order**"). The Sale Order shall be deemed be to reasonably satisfactory to Purchaser if it contains findings and conclusions by the Bankruptcy Court that, among other things, decree, find and conclude that: (i) this Agreement is approved pursuant to section 363 of the Bankruptcy Code; (ii) the Business Assets are being sold to Purchaser free and clear of all liens, claims, interests, and encumbrances of any type whatsoever, including claims otherwise arising under doctrines of successor liability pursuant to section 363(f) of the Bankruptcy Code, (iii) the actions taken by the Purchaser in connection with the sale were undertaken in good faith, as such term is defined in section 363(m) of the Bankruptcy Code, and the Purchaser is a good faith purchaser and is entitled to the full protection of section 363(m) of the Bankruptcy Code; (iv) the Purchaser is not liable for any claims held by any Person against the Seller or for any obligations of the Seller arising under or related to the Business Assets except as expressly set forth in this Agreement; and (v) the Seller has complied with the notice requirements of Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure and any applicable rules of the Bankruptcy Court with respect to the transactions contemplated hereby.

**8.2     Competing Transaction**. The Purchaser acknowledges that, from the date hereof until the entry of the Sale Order, the Seller has a fiduciary duty to, and to cause its representatives and affiliates to consider submission of any inquiries, proposals or offers by, any Person (in addition to the Purchaser and its affiliates, agents, and representatives) in connection with any sale or other disposition, directly or indirectly, in one or more transactions, of the Business Assets or otherwise ( "**Competing Transaction**"). In addition, Purchaser acknowledges that from the date hereof until the issuance of the Sale Order by the Bankruptcy Court, the Seller shall have the responsibility and obligation to respond to any inquires or offers to purchase all or any part of the Business Assets and perform any and all other acts related thereto which are required under the Bankruptcy Code or other applicable legal requirements, including, without limitation, supplying information relating to the Business and the Business Assets.

## SECTION 9
## CONDITIONS
## PRECEDENT

**9.1     Conditions Precedent to the Obligations of the Purchaser**. The obligations of the Purchaser hereunder are subject to the satisfaction on or prior to the Closing of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Purchaser, unless such a waiver is prohibited by law).

(a)     Compliance with Agreement. The Seller shall have performed and complied in all material respects with all of its obligations under this Agreement which are to be performed or complied with by Seller prior to or on the date of the Closing.

(b)     No Order. No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no claim, action, suit, arbitration, inquiry, adverse proceeding or investigation (each, an "**Action**") shall be pending (other than an Action that has been or would be vitiated by the Sale Order) by or before any governmental authority or arbitrator against the Purchaser or the Seller, seeking to restrain, enjoin or materially restrict the transactions contemplated by this Agreement; provided, however, that the provisions of this Section shall not apply if the Purchaser has directly solicited or encouraged any such Action.

(c)     Release. The Sale Order shall provide that the Purchaser is released from any and all claims of any kind or nature whatsoever, through and including the Closing Date, which could be asserted by the Seller, the Seller's bankruptcy estate or any party having standing to take action on behalf of the Seller's bankruptcy estate.

(d) <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered the Sale Order as described herein.

**9.2** <u>**Conditions Precedent to the Obligations of the Seller**</u>. The obligations of the Seller hereunder are subject to the satisfaction on or prior to the Closing of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Seller, unless such a waiver is prohibited by law).

(a) <u>Representations and Warranties True</u>. The representations and warranties made by the Purchaser in this Agreement shall be true and correct, in each case as of the Closing Date (other than those representations and warranties that address matters as of a particular date), with the same effect as though such representations and warranties had been made or given on and as of such date.

(b) <u>Compliance with Agreement</u>. The Purchaser shall have performed and complied in all material respects with all of their obligations under this Agreement which are to be performed or complied with by Purchaser prior to or on the date of the Closing Date.

(c) <u>No Order</u>. No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no Action shall be pending (other than an Action that has been or would be vitiated by the Sale Order) by or before any governmental authority or arbitrator against the Purchaser or the Seller, seeking to restrain, enjoin or materially restrict the transactions contemplated by this Agreement.

(d) <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered the Sale Order as described herein, and such Sale Order shall not be subject to any stay.

## SECTION 10
## MISCELLANEOUS

**10.1** <u>**Expenses**</u>. Except as provided in 8.4 above, each party will be responsible for the payment of its own costs and expenses (including, without limitation, professional fees of its attorneys, accountants and other advisors) in connection with the transactions contemplated herein.

**10.2** <u>**Notice of Litigation**</u>. During the period from the date of this Agreement to the Closing Date, each party will promptly inform the other party in writing of any litigation commenced or, to the knowledge of such party, threatened against such party in respect of the transactions contemplated by this Agreement or the Business.

**10.3** <u>**Assignment**</u>. Purchaser may, without the prior written consent of the Seller, transfer or assign by operation of law or otherwise this Agreement to another entity whereupon the liability of the Purchaser herein shall cease and terminate.

**10.4  Good Faith**. The Seller and the Purchaser shall cooperate in all reasonable respects and in good faith in seeking (i) entry by the Bankruptcy Court of the Sale Order and (ii) the consummation of the transactions contemplated hereby.

**10.5  Governing Law**. This Agreement shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

**10.6  Jurisdiction and Jury Waiver**. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or any other agreement entered into by the Parties in connection herewith, or the breach hereof or thereof, and each of the Parties hereby consents to the personal jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any right to trial by jury and any objection, including, but not limited to, any objection to the laying of venue or on the grounds of *forum non conveniens*, which any of them may now or hereafter have to the bringing of such action or proceeding in such jurisdiction. Each Party hereby irrevocably consents to the service of process of any of the aforesaid courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the other parties to such action or proceeding.

**10.7  Amendment and Modification**. No amendment, modification, waiver, replacement, termination, or cancellation of any provision of this Agreement will be valid, unless the same will be in writing and signed by the Purchaser and the Seller party hereto.

**10.8  Notices**. All notices, requests, demands and other communications hereunder shall be made in writing. Notices, requests, demands and other communications shall be deemed to be duly given upon the date of delivery, if delivered by hand; upon the date of sending, if delivered by email; upon the second business day after mailing, if mailed by certified or registered mail with postage prepaid; or upon the first day after dispatch, if sent by nationally-recognized overnight courier as follows:

If to the Seller:
    Village Red Restaurant Corp.
    d/b/a Waverly Restaurant
    c/o Lawrence F. Morrison, Esq.
    Brian J. Hufnagel, Esq.
    Morrison Tenenbaum PLLC
    87 Walker Street, Floor 2
    New York, NY 10013
    bjhufnagel@m-t-law.com

If to the Purchaser:

    135 Waverly Realty, LLC
    c/o Mitchell &Incantalupo, Esqs.

or to such other addresses as any party may provide to the other parties in writing.

**10.9** **Entire Agreement.** This Agreement, together with its schedules and the certificates, agreements, documents, instruments and writings that are delivered pursuant hereto, constitutes the entire agreement and understanding of the Purchaser and the Seller with respect to the subject matter hereof and supersedes all prior understandings, agreements, or representations by or among the Purchaser and the Seller, written or oral, to the extent they relate in any way to the subject matter hereof or the transactions contemplated hereby.

**10.10** **Successors**. This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and to their respective successors and permitted assigns.

**10.11** **Counterparts and Electronic Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument. Signatures in Portable Document Format or other similar electronic format shall constitute original signatures for the purposes of this Agreement.

**10.12** **Severability**. The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of the other provisions hereof.

**10.13** **Drafting Presumption**. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

**10.14** **Headings**. The headings used in this Agreement are for convenience only and shall not constitute a part of this Agreement.

**10.15 Third Party Beneficiaries**. This Agreement is solely for the benefit of the parties hereto and their respective successors and permitted assigns, and this Agreement shall not be deemed to confer upon or give to any other third party any remedy, claim of liability or reimbursement, cause of action, or other right.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**PURCHASER:**
**135 Waverly Realty, LLC**

By: *Christine Serafis*

Name: Christine Serafis
Title: Member


**SELLER:**

**Village Red Restaurant Corp.**
**d/b/a Waverly Restaurant**

By *Christine Serafis*
Name: Christine Serafis
Title: President