UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                              Chapter 11

VILLAGE RED RESTAURANT CORP.                           Case No. 18-10960 (MEW)
d/b/a WAVERLY RESTAURANT,

                                Debtor.
-----------------------------------------------------------X

**DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION UNDER
CHAPTER 11 DATED SEPTEMBER 12, 2019**

## ARTICLE 1: SUMMARY

This Second Amended Plan of Liquidation (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Village Red Restaurant Corp. d/b/a Waverly Restaurant (the "Debtor") from proceeds of the asset sale conducted by the Debtor in this case. The Debtor sold its assets for the sum of $100,000 to 135 Waverly Realty LLC ("135 Waverly"). Additionally, the Debtor has identified potential improper transactions between Debtor and any other individual or entity, including but not limited to 135 Waverly, the Estate of Nicholas Serafis, and Christine Serafis. The Plan appoints a Plan Administrator to investigate those transactions and provides the authority for the Plan Administrator to bring an action against any individual or entity regarding such transactions. The Plan also provides for the payment to creditors from funds recovered from avoidance actions.

This Plan provides for one class of priority wage claims, one classes of unsecured claims, and one class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 0.75% of the allowed amount of such claims, plus a pro-rata distribution of funds recovered from avoidance actions. This Plan also provides for the payment of administrative and priority tax claims. Depending on the amounts recovered by the Plan Administrator and the costs of the litigation, distributions could increase to between 5% to 14% of filed claims.

Administrative claims will be paid in full on the effective date, or according to the terms of the obligation, or pursuant to agreement with the claimant.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that

provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

    2.01    <u>Class 1</u>    The priority wage claim of the National Labor Relations Board.

    2.02    <u>Class 2</u>    All non-priority unsecured claims.

    2.04    <u>Class 3</u>    Equity interests of the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

    3.01    <u>Unclassified claims</u>. Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

    3.02    <u>Administrative expense claims.</u> Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

    3.03    <u>Priority tax claims</u>. Each holder of a priority tax claim will be paid in full, with interest, over a period of no later than 60 months after the petition date.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their treatment under the Plan:

| Name and type of tax | Filed Amount of Claim | Treatment |
|---|---|---|
| None filed | n/a | n/a |

    3.04    <u>United States Trustee Fees</u>. Statutory fees, and any applicable interest thereon, are all fees payable pursuant to chapter 123 of title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. § 1930(a)(6) and interest, if any, required to be paid by 31 U.S.C. § 3717 (collectively, "U.S. Trustee Fees"). U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the

Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan. The Debtor shall remain responsible for any and all U.S. Trustee fees that become due and shall pay same on a timely basis.

The Debtor shall reserve the sum of $3,000 from the sale proceeds for the payment of U.S. Trustee Fees (the "U.S. Trustee Fee Reserve"). The U.S. Trustee Fee Reserve is not a cap on the amounts that may be come due for U.S. Trustee Fees.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Wage claim of the National Labor Relations Board | Unimpaired | Pursuant to a settlement between 135 Waverly and the National Labor Relations Board, the Board has has withdrawn its priority and unsecured claims. |
| Class 2 – General Unsecured Creditors | Impaired | Creditors in this class will receive a pro-rata distribution of the remaining funds in the estate after payment of administrative and priority claims. The Debtor estimates that creditors will receive 1.07% of their allowed claims, payable on the effective date plus a pro rata distribution of any funds that are be recovered from avoidance actions.<br><br>Filed claims: $5,347,616.81<br>Estimated funds available for this class: $57,000.00<br>Estimated distribution percentage: 1.07% |
| Class 3 - Equity interest holders | Impaired | The holders of Class 3 Interests will receive no Distribution. On the effective date, all Class 3 Interests will be deemed canceled, null and void and of no force and effect. |

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

3

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.  All claims objections will be filed no later than 90 days after entry of the confirmation order, unless extended pursuant to order of the Court.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS

6.01    Assumed Executory Contracts and Unexpired Leases.

The Debtor does not have any executory contracts or unexpired leases to assume or assign.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Payments and distributions under the Plan will be funded by the proceeds of the sale of the Debtor's assets in the amount of $100,000, which is currently being held in escrow by counsel to the Debtor plus a distribution of funds recovered from avoidance actions.  Morrison Tenenbaum PLLC ("Morrison Tenenbaum") shall be the disbursing agent with respect to the sale proceeds of $100,000 being held in escrow by Morrison Tenenbaum.  The Plan Administrator shall be the disbursing agent (the "Disbursing Agent") under the Plan with respect to any post effective-date distributions.  Morrison Tenenbaum shall transfer the Quarterly Fee Reserve to the Plan Administrator.

7.02

### i. The Plan Administrator

(a) Appointment.  In the Confirmation Order, the Plan Administrator will be appointed and will be bound to perform as required by the Plan.  The Debtor, with the advice and consent of counsel to the remaining unsecured creditors, has designated Christopher F. Graham of Eckert Seamans Cherin & Mellott, LLC PLLC to serve as Plan Administrator (the "Plan Administrator") under the Plan.  The Debtor

understands that Christopher F. Graham has performed a conflicts check with respect to this matter and, to the best of their knowledge, information and belief, neither Christopher F. Graham nor his/her firm holds or represents any interest adverse to the Debtor, and he/she is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

(b) <u>Duties and Powers</u>. (i) On the Effective Date, the Plan Administrator will be the representative of the Post-confirmation Estate and successor to the Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided in the Bankruptcy Code, in addition to any rights and powers granted herein and in the Confirmation Order. In the Plan Administrator's capacity as the representative of the post-confirmation estate and successor to the Debtor and the estate, the Plan Administrator will be the successor-in-interest to the Debtor with respect to all causes of action and other interests constituting post-confirmation estate assets and with respect to the claims of creditors. The Plan Administrator shall act in a fiduciary capacity for the holders of all allowed claims under the Plan and shall have all of the rights, powers and duties of a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. The Plan Administrator shall, in his/her discretion, assume all of the responsibilities, duties and obligations of the Debtor's former officers and directors that arise after the Effective Date of the Plan and is empowered and authorized to satisfy any such responsibilities, duties, and obligations so assumed without further corporate authority as may have been required prior to the Effective Date. The Plan Administrator shall serve as the "Distribution Agent" under the Plan. The Plan Administrator will, in his/her discretion, pay from the post-confirmation estate all ordinary and necessary costs of protecting, preserving, disposing, liquidating and realizing upon the post-confirmation estate. The Plan Administrator is authorized to investigate and, if necessary, litigate any causes of action on behalf of the Debtor and shall have standing as a representative of the post-confirmation estate to pursue any causes of action and claims objections, whether initially filed by the Debtor or the Plan Administrator, and the Plan Administrator may assert any defenses that may otherwise have been asserted by a trustee under the Bankruptcy Code. The Plan Administrator shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Plan Administrator, and the Plan Administrator shall have the power and authority (aa) to enter into such settlements as the Plan Administrator deems to be in the best interests of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (bb) to abandon, dismiss and/or decide not to prosecute any such litigation if the Plan Administrator deems such action to be in the best interests of creditors. The Plan Administrator shall also be vested with all rights, powers, and benefits afforded to a "trustee" under 11 U.S.C. § 108. The Plan Administrator will liquidate and administer the post-confirmation estate assets, will object to/challenge/settle all disputed claims, and will make distribution from the post-confirmation estate, all in accordance with the terms of the Plan. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Plan Administrator will abide by all laws, including tax laws. The Plan

Administrator shall have sole and exclusive authority for the retention of professionals to assist in any manner on and after the Effective Date, which includes the retention of counsel to the Plan Administrator. (ii) The Plan administrator will have the power to take any and all actions which, in the business judgment of the Plan Administrator, as are necessary or appropriate to fulfill his/her obligations under the Plan, including, but not limited to, each of the powers set forth below:

a. hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any post-confirmation estate assets solely for the benefit of holders of allowed claims in accordance with the Plan;

b. prosecute any and all avoidance or recovery actions including but limited to actions against 135 Waverly;

c. reconcile claims and contest objectionable claims and disputed claims;

d. make all distributions to be funded under the Plan;

e. assume control over all of the Debtor's and estate's assets;

f. pay all necessary expenses incurred in connection with the duties and responsibilities of the Plan Administrator under the Plan to the extent of available funds;

g. administer, implement and enforce all provisions of the Plan;

h. administer the Plan and the post-confirmation estate assets;

i. abandon any post-confirmation estate assets;

j. to invest cash in accordance with section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court;

k.  to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable; and

l.  undertake such other responsibilities as are reasonable and appropriate in connection with the Plan.

(c) <u>Reporting Requirements</u>.  The Plan Administrator shall prepare and maintain distribution schedules with respect to all classes of claims.  As soon as practicable following the confirmation date, but no later than the Effective Date, the Debtor shall prepare and deliver to the Plan Administrator distribution schedules with respect to administrative claims and for all other classes of claims.  Until entry of the final decree, status reports shall be filed periodically approximately every ninety (90) days.  Each status report shall generally include a description of post-confirmation assets sold or otherwise realized upon during the relevant period, a status of any pending litigation, gross and net proceeds received, distributions and payments made, expenses incurred and paid, and cash on hand.  A standard post-confirmation operating report as required by the United States Trustee shall meet the requirements of this status report.  The Plan Administrator shall file and serve a notice of proposed distribution seven (7) days prior to making any proposed distributions under the Plan.

(d) <u>Compensation</u>.  The post-confirmation estate shall pay reasonable compensation for the services provided by the Plan Administrator and any other professionals or entities retained by the Plan Administrator as permitted under the Plan.  The Plan Administrator shall have the authority to employ and retain any professionals as the Plan Administrator may select to assist the Plan Administrator in his/her duties, on such terms, including contingency-fee arrangements, as the Plan Administrator reasonably deems appropriate, subject to the terms and provisions of the Plan.  All reasonable fees and expenses incurred in connection with the performance of his/her duties and obligations as Plan Administrator on behalf of the post-confirmation estate including, without limitation, the fees and expenses of the Plan Administrator, any accountants, attorneys, real estate broker, property manager and other professionals engaged by the Plan Administrator, shall be paid out of the post-confirmation estate, subject to the terms and provisions hereof.

(e) <u>Post-confirmation Debtor</u>.  Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor.  The Debtor may dissolve after the occurrence of the entry of a final decree if it so desires.  The Plan Administrator shall not be responsible for (i) maintaining the corporate existence of the Debtor; (ii) dissolving or otherwise terminating the existence of the Debtor; or (iii) filing any tax returns on behalf of the Debtor, its estate or post-confirmation

estate. The Debtor's principle shall be responsible for preparing or causing to be prepared all local, state or federal tax returns, filings, and/or reports that are necessary or appropriate.

**ARTICLE 8: GENERAL PROVISIONS**

  8.01 <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

  8.02 <u>Effective Date of Plan</u>. The Plan shall be effective and binding on the Effective Date. The Effective Date shall be the date of initial distributions under the Plan which shall occur no later than 14 days after entry of the Confirmation Order. It will be a condition to the Effective Date that each of the following provisions, terms, and conditions will have been satisfied pursuant to the provisions of the Plan:

(1) The Confirmation Order shall have been entered by the Court and shall not be subject to any stay or subject to an unresolved request for revocation under Section 1144 of the Bankruptcy Code.

(2) The Debtor shall have paid initial distributions required by the Plan.

  8.03 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

  8.04 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

  8.05 <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

  8.06 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

  8.07 <u>Corporate Governance</u>. Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs. On and after the effective date, the Debtor may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

8.08    Retention of Jurisdiction.  Notwithstanding Confirmation, the Court shall retain jurisdiction for the following purposes:

(1) Determination of the allowability of Claims upon objections filed to such Claims, and any pending litigation by the Debtor or by creditors or third parties;

(2) Determination of requests for payment of Claims and fees entitled to priority under § 507;

(3) Resolution of any disputes concerning the interpretation of the Plan;

(4) Implementation of the provisions of the Plan;

(5) Entry of Orders in aid of Consummation of the Plan;

(6) Modification of the Plan pursuant to § 1127 of the Code;

(7) Adjudication of any causes of action including voiding powers actions commenced by the Debtor-in-Possession; and

(8) Entry of a Final Decree and closing the case

**ARTICLE 9: DISCHARGE**

9.01.   No Discharge of the Debtor.  The Debtor is a corporation that is liquidating. Accordingly, pursuant to § 1141(d)(3) the Debtor is not receiving a discharge in this case.

**ARTICLE 10: OTHER PROVISIONS**

10.01   Unclaimed Property.  Escrow of Unclaimed Property. The Post Confirmation Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the respective holders of Claims entitled thereto under the terms of the Plan.

Distribution of Unclaimed Property. At the end of one (1) year following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims entitled to Unclaimed Property held pursuant to this Section shall be redistributed, pro-rata, by the Disbursing Agent.

10.02 <u>Modification of the Plan</u>.  The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if:
(1) The Plan has not been substantially consummated and
(2) The Court authorizes the proposed modifications after notice and a hearing.

10.03 <u>Final Decree.</u>  Pursuant to SDNY LBR 3021-1 and 3022-1, the Debtor shall file proposed order that contains a timetable with the steps proposed for achieving substantial consummation of the plan and entry of a final decree within fourteen days after entry of the confirmation order.  A final decree will be entered in this case within 14 days following the full administration of the Debtor's estate.  Upon request, the Court may reduce or extend the time to file such application.

10.04 <u>Quarterly Reports</u>.  Until the Chapter 11 Case is closed, converted or dismissed, whichever is earlier, the Reorganized Debtor shall file quarterly reports setting forth the status of Distributions to holders of Allowed Class 2 Claims. The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Distribution Agent shall maintain an accurate register of the General Unsecured Claims.

10.05 <u>Re-vesting of Assets and Continuing Existence</u>.  As of the Effective Date, pursuant to provisions of Bankruptcy Code sections 1141(b) and (c), all property and assets of the Debtor shall be transferred to and shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

Unless otherwise agreed to by the claimant, immediately after the earlier of a Final Order of the Bankruptcy Court or the occurrence of the Effective Date, the Debtor or the Post-Confirmation Debtors shall pay all Allowed Administrative Expense Claims, including Fee Claims.

From and after the Effective Date, the Post-Confirmation Debtor shall wind down operations but will continue in existence and shall be vested with all of the Debtor's assets solely to the extent necessary to implement the Plan and wind down the estate.

Dated:
September 12, 2019

Village Red Restaurant Corp.

*/s/ Christine Serafis*
By: Christine Serafis


Dated: New York, New York
September 12, 2019

MORRISON TENENBAUM PLLC

By:   /s/ Lawrence F. Morrison
Lawrence F. Morrison
Brian J. Hufnagel
87 Walker Street, Floor 2
New York, New York 10013
Tel.: (212) 620-0938
*Counsel for the Debtor*
lmorrison@m-t-law.com
bjhufnagel@m-t-law.com